BAKER v. BAKER

No. 7433. Decided November 22, 1950. (224 P. 2d 192.)

*Wilson & Wilson,* Ogden, for appellant.

*Dobbs & Dobbs,* Ogden, for respondent.

LATIMER, Justice.

This is an appeal brought by the plaintiff from a decree entered September 27, 1949, finding plaintiff in contempt of court, modifying a decree of divorce and making

other orders favorable to the defendant. The parties are referred to as they appeared in the court below.

On June 30, 1948, the district court in the original divorce action granted plaintiff a divorce and awarded her the care and custody of the two minor children, subject to defendant's right of visitation at reasonable times and places. In dividing the property, the court awarded plaintiff certain real property located in Ogden, Utah, and defendant real property located in Salt Lake City, Utah. In addition, the court found that the defendant was capable of earning approximately $300 per month, and that he had no other dependents. He was, therefore, ordered to pay the sum of $50 per month toward the support and maintenance of each of the two minor children. He was also directed to pay $250 to plaintiff for attorneys' fees and $56.20 for court costs.

On August 4, 1948, plaintiff filed an affidavit in which she requested an order to show cause why defendant should not be punished for failure to comply with the judgment. She alleged that the defendant was in contempt of court in that he had failed to pay the attorneys' fees and costs assessed against him and that he had paid only $50 support money to the minor children of the parties during the month of July, 1948, and was, therefore, $50 in arrears in the payments. The order to show cause was served upon the defendant on August 16, 1948, and filed on August 18, 1948. On September 8, 1948, defendant was ordered to pay $150 monthly until all payments were brought up to a current basis.

On or about October 18, 1948, defendant notified plaintiff that he desired to take the children to see their grandmother on the following day, it being her birthday, and at that time plaintiff refused to have them available. In the latter part of November, defendant sought to take the children to see his mother, who was then very ill. Plaintiff

insisted that the visit be limited to one-half hour. Upon defendant's demand that he be allowed to take the children for a longer period, a dispute arose between the parties during the course of which defendant told plaintiff that he would make no further contributions toward the support of the children unless or until he was given opportunities to see them and visit them without the plaintiff or other relatives being present. The following day, when defendant went to plaintiff's home for the children, he found no one at home.

In the fall of 1948, plaintiff sold the property awarded to her and purchased a home in Nyssa, Oregon, where her children by a former marriage and other relatives and friends resided. On November 25, 1948, she left Ogden with the two children and went to that town where she established her residence and made her home. Defendant knew nothing about her departure and did not learn of his children's whereabouts until the following January.

On February 5, 1949, a second affidavit and order to show cause were served upon the defendant. In this affidavit, plaintiff alleged that the defendant was in arrears in his payments of support and maintenance money in the amount of $300.00. On February 28, 1949, defendant filed a return to the order to show cause, alleging: That by the terms of the divorce decree the award of $50.00 per month toward the support of each of the children was made subject to the right of visitation by the defendant; that the actions of plaintiff in depriving him of this right were in contempt of the court decree; and, that by preventing him from seeing the children and by taking them to Oregon plaintiff had lost her right to require compliance with the decree. He further alleged a change in financial circumstances due to a fire which had destroyed the improvements on the Salt Lake City property and requested

that the amount of support and maintenance payments be reduced.

The order to show cause came on for hearing on the 22nd day of July, 1949, and the lower court found the defendant was in contempt of court for his failure to pay the $250 attorneys' fee and the $56.20 court costs assessed against him in the original decree, but allowed defendant to purge himself of this contempt by paying these amounts within fifteen days, which he did. The court further found that the plaintiff was in contempt of court because of her actions in depriving defendant of his right to visit the children both before she left Ogden and by taking them out of the state. Because of plaintiff's contempt and the change in circumstances the court modified the original divorce decree and ordered that the defendant's contributions to the support and maintenance of the children be reduced to $30 per month for each child; that the plaintiff be required to bring the children to the state of Utah at least three times a year; that defendant be allowed to visit the children in Oregon once a month; and that he be permitted to visit them out of the presence of the plaintiff and other relatives. The court further ordered that the reduction in the payments revert back to and be made effective as of March, 1949, the time at which defendant filed his return to the order to show cause, and that plaintiff be deprived of the right to enforce payment of the $350 due for the support of the children from November 15, 1948, to February 28, 1949.

On this appeal plaintiff has assigned eight points for argument, which we have grouped into five contentions for the purpose of this opinion. She contends that the court erred in (1) finding plaintiff in contempt of court; (2) imposing the $350 penalty against her for contempt; (3) modifying the original decree of divorce by decreasing the maintenance and support payments; (4) refusing to

modify the decree so as to give her the express right to keep the children in Oregon; and (5) refusing to allow certain evidence to be admitted regarding defendant's unfitness to be alone with the children. We discuss these assignments in the order stated.

There is ample evidence to sustain the court's findings of contempt on the part of the plaintiff, particularly with respect to depriving defendant of his right of visitation prior to the time she departed from this state. On at least two occasions defendant's efforts to visit with the children were thwarted by plaintiff's actions. In October, 1948, she refused to allow the children to go with defendant to visit their grandmother on her birthday. About a month later, when he requested that she allow him to take the children to visit their grandmother who was then very ill, she refused because he would not promise to return the children in one-half hour. The evidence further indicates that on other occasions she refused to let him take the children or visit with them anywhere other than in her home or in the presence of herself or other relatives, though the divorce decree imposed no such restrictions.

While the court further found that plaintiff was in contempt of court because she removed the children from the state of Utah, we need not pass on that question. Taking the children from this jurisdiction is of importance in connection with defendant's change in circumstances which will be discussed later, but in view of plaintiff's earlier refusal to permit a fair visit by defendant a second finding of contempt is unimportant.

This brings us to a consideration of the second contention. As a consequence of plaintiff's contempt, the lower court concluded that a reasonable punishment would be to deprive her of the right to receive all payments which

had accrued between November 10, 1948, and February 28, 1949. The issue thus becomes whether or not the plaintiff, having been found in contempt of the court's decree, may be denied the use of the court's processes to enforce payment of past due installments.

It is a general rule that a party who is in contempt will not be heard by the court when he wishes to make a motion or grant a favor, and if a party files a pleading while in contempt, it will be stricken from the file on motion. See *Bradshaw* v. *Bradshaw,* Tennessee, 1939, 23 Tenn. App. 359, 133 S. W. 2d 617. In *Cole* v. *Cole,* 142 Ill. 19, 31 N. E. 109, 111, 19 L. R. A. 811, where a former husband who was in arrears in his payments for alimony petitioned the court for modification of the decree in order to have the alimony payments reduced, the court denied his petition, saying:

"He does not come into court with clean hands, and will not be permitted to ask relief from a decree of which he is in contempt. Before he should be permitted to be heard, he should be required to comply with the order of the court up to the time of his application."

The Supreme Court of California, in the case of *Weeks* v. *Superior Court of California,* 187 Cal. 620, 203 P. 93, 94, refused to grant a writ of mandate requested by a party who was in contempt of court. There, the original interlocutory divorce decree granted custody of the minor children of the parties to the husband. The wife, however, took the children from the jurisdiction of the court and remained outside its jurisdiction. When one year had expired, she petitioned the court for a final decree of divorce, filing her petition through an attorney. The court refused to grant the petition and she sought a writ of mandate to compel action by the court. *The Supreme Court* said:

"* * * the petitioner has treated the order of the court with contempt and removed herself and the minor from the jurisdiction so that it cannot be enforced. She should not be allowed to make application for final decree

of divorce until she has submitted to the lawful order of the superior court in relation to the custody of the child of the parties to the action or otherwise purged herself of the contempt."

For cases to the same effect, see also *Knoob* v. *Knoob,* 192 Cal. 95, 218 P. 568; *Travis* v. *Travis,* 89 Cal. App. 2d 291, 200 P. 2d 843; and *State ex rel. Hunter* v. *Ronald, Superior Court Judge,* 106 Wash. 413, 180 P. 125.

However, the foregoing cases cited as illustrating the general rule all deal with a situation where the moving party was in contempt and seeking to enforce a right or advantage against another party who was completely free from fault. The case now before us presents a somewhat different situation.

Under the terms of the original divorce decree, dated June 30, 1948, the defendant was ordered to "pay forthwith" to the plaintiff the sum of $250 attorneys' fees and $56.20 court costs. He failed to make these payments until about August 10, 1949, some eighteen days after the hearing in the present matter. Under the terms of the original decree he was required to comply with the following conditions: Leave the premises in Ogden and take his personal belongings but not any of the household furniture, furnishings, or equipment; obtain a quitclaim deed from his mother to clear the record title to the property; deliver to the plaintiff an abstract of title to the premises; and pay $100 per month toward the support of the minor children, payable in two equal monthly installments of $50 each on the 10th and 25th days of each month. On August 4, 1948, an affidavit signed by the attorney for plaintiff in connection with the first order to show cause, indicates that defendant had failed to pay the attorneys' fees and the court costs; had removed valuable pieces of furniture and furnishings from the Ogden property and refused to return them to the plaintiff; had failed to deliver to the plaintiff a quitclaim deed and abstract of title

to the Ogden property; and had made only one $50 payment toward the support and maintenance of the two minor children during the month of July, 1948, and was, therefore, $50 in arrears in such payments. On September 8, 1948, defendant was ordered to pay $150 monthly payments until he caught up the delinquent payments due. At the hearing in the present matter he admitted his contempt.

Moreover, when plaintiff committed the acts for which she is now found in contempt, defendant rather than seeking the aid of the court to enforce proper conduct on her part or to modify the decree, chose to add to his record of default and use her conduct as an excuse for withholding support money payments from November 25, 1948, to February 28, 1949, both inclusive. Thus the effect of the trial court's ruling is to allow defendant who was in contempt to benefit from the use of the court processes while denying them to plaintiff who occupied the same status.

In the case of *Zirkle* v. *Zirkle*, 1930, 202 Ind. 129, 172 N. E. 192, 193, the Supreme Court of Indiana had under consideration a case somewhat similar to the one now before us. There, the mother had been awarded custody of the minor child of the parties, and the father was ordered to pay monthly payments for the support and maintenance of the child. The mother brought an action to recover the sum of $480 in past due installments. The defendant by his answer alleged that the mother, without a legal right to do so, had removed the child from the jurisdiction of the court and by reason thereof was not entitled to enforce the order and judgment for the support payments. The lower court permitted the mother to recover only the sum of $125, such amount being based upon the time that the child was within the state of Indiana. On Appeal, the Supreme Court reversed and said:

"In *Joab* v. *Sheets* (1884) 99 Ind. 328, the court said: 'The alleged misconduct of the appellee in having disregarded, and in planning for the

further disregard of some of the provisions in the decree of divorce, concerning the custody of the child, might have afforded some reason for the modification of, or some change in, those provisions in a direct proceeding to that end, but it did not of itself work a forfeiture of any of the appellee's rights or responsibilities under the decree.' In that case it was held that where, upon granting a divorce, the custody of a child was given to the wife, with directions forbidding its removal from the court's jurisdiction, a disregard of such direction did not per se give the father a right to such custody.

"In another jurisdiction it has been held that payments exacted by an original decree of divorce become vested in the payee as they accrue, and the court, on application to modify the decree, is without authority to reduce the amounts or modify the decree, with reference to payments retrospectively; the modifying decree relating to the future only, and from the time of its entry. *Kell* v. *Kell* (1917) 179 Iowa 647, 161 N. W. 634; *Delbridge* v. *Sears* (1916) 179 Iowa 526, 160 N. W. 218.

\* \* \* \* \* \*

"In the case under consideration, it must be presumed that the order as to custody and support of the child was made for the benefit of the child. The child was and still is entitled to have the order executed. The order has not been modified or set aside. The decree did not provide that the child should be kept in the state. \* \* If the appellant, without the consent of the court, or without right, took the child out of the state, that act did not give the appellee any reason for refusing to make the weekly payments which the court had ordered. After hearing evidence on the petition, the court ordered the appellee to pay for the greatest possible showing of time the child was in this state after its removal to the state of Michigan, it having been in Indiana during school vacations and on visits. But after payments had accrued, it was not within the power of the court to annul any of them in this proceeding."

In *Feinberg* v. *Feinberg*, 1907, 72 N. J. Eq. 810, 66 A. 610, 611, the Court of Chancery of New Jersey said:

"It is clearly contrary to the terms of section 7 of the act concerning the custody and maintenance of minor children (P. L. 1902, p. 259 [N. J. S. A. 9:2-2]) for defendant to remove the minor in question out of the jurisdiction of this court, without first obtaining the consent of petitioner or an order of this court for that purpose. I am unable, however, to relieve against the payment of such moneys as have accrued under the existing decree during the period in which no complaint has been made to the court touching such removal. It is not the privilege of petitioner to refuse payments accruing pursuant to the terms of the decree. When new conditions arise, which, in the opinion of petitioner, entitle him to a modification of the decree, he should make application to the court for such modification, if he desires to avail himself of rights arising from the new conditions."

In the case of *Helmbold* v. *Helmbold*, 127 Misc. 761, 217 N. Y. S. 379, 380, the New York court said:

"* * * The failure of the plaintiff to observe the provisions in the decree relating to the right of the defendant to see and visit his children is no excuse for refusing to pay the alimony. The payment of alimony was not made conditional upon the observance of this provision in the decree. * * * The defendant had a remedy under the decree to compel observance, just as the plaintiff is pursuing her remedy to compel payment of alimony. The action of the defendant in refusing to pay alimony amounted to a modification of the decree. A decree can be modified only through the proper channels."

Other cases which have held that one who has been deprived of his right of visitation may not withhold payment for support and maintenance or for alimony are *Schweig* v. *Schweig*, 122 App. Div. 787, 107 N. Y. S. 905, and *Altschuler* v. *Altschuler*, 1935, 246 App. Div. 779, 284 N. Y. S. 93.

In the instant case, in view of the defendant's record of default in meeting the terms and conditions imposed upon him by the divorce decree, and in view of his own contemptuous acts, we hold that the trial court erred in denying plaintiff the right to enforce the past due installments.

We overrule plaintiff's contention that there was no showing of a change of circumstances sufficient to warrant a decrease in the monthly payments. At the time the original divorce decree was entered, the defendant was found to be capable of earning approximately $300 a month. Based upon these earnings and upon the fact that defendant had no other dependents, the court ordered that he be required to pay $100 per month toward the support of the two minor children. In the present action, the court found that defendant's income was approximately $350 to $400 per month. It is plaintiff's contention that under such conditions the defendant is not entitled to a reduction since he failed to establish that his

48

circumstances had changed sufficiently to warrant a decrease in the support payments.

Defendant argues that the reduction of the support and maintenance payments was properly within the discretionary power of the court in view of the changed circumstances occasioned by the removal of the children from the state of Utah. Under the decree of divorce, defendant was given the right to visit his children at reasonable times and places. The plaintiff has moved, with the children, to Nyssa, Oregon, approximately 420 miles from where she and the defendant lived. She has established a residence for herself and the children there and intends not to return. The defendant is employed by the Southern Pacific Railroad Company, on which he has a pass which can be used for trips to Nyssa. However, he has only a short layover of approximately two days between runs; and, though he could visit Nyssa between runs, such a hurried trip would not permit him adequate rest and would in general be very unsatisfactory. If he took a longer period of time for the trip it would necessitate a loss of income. Plaintiff's acts have thus placed defendant in a situation where he must either forego any association with his children or be required to pay additional charges for the privilege.

Plaintiff next contends that the trial court should have granted her request to modify the decree so as to remove the uncertainty about her right to continue the residence of the children in the State of Oregon. We are of the opinion that her request in this regard is reasonable. Though such a right is implied by the present decree, we see no reason why it should not be made explicit. There is evidence to indicate that the best interests of the children can be better served by allowing her to continue living with them there. Her daughter by a former marriage and other friends and relatives who are

located in Oregon give plaintiff assistance in providing and caring for the children. Defendant, on the other hand, made no serious claim that the children would be happier or better cared for in Utah. His only concern was that the distance separating him from them restricted and limited his right to visit them. By the modified decree he has been given consideration for this inconvenience. The decree should be further modified to remove any uncertainty and permit plaintiff to keep the children in that state subject to the orders of the trial court.

Plaintiff lastly contends that the trial judge erred in refusing to admit certain evidence offered by her. During the hearing, plaintiff made a proffer of evidence on the unfitness of the defendant to visit and be alone with the children. This evidence concerned incidents which occurred prior to the hearing in the original divorce action and did not involve any improper conduct subsequent to the decree. The trial judge properly rejected the proffered testimony. The court had made an implied finding that the father was a proper person to be with the children when it permitted him an unlimited right of visitation. In this regard, we call attention to the reasoning used by the District Court of Appeals of California in the case of *Crider* v. *Crider*, 11 Cal. App. 2d 594, 54 P. 2d 485, hearing denied by the Supreme Court of that state. There, the court said:

"In divorce proceedings the court retains power to vary and modify custodial orders respecting minor children. Applications with regard thereto are peculiarly addressed to the sound discretion of the court, and its conclusion will not be disturbed except upon a clear showing of abuse of discretion. *Crater* v. *Crater*, 135 Cal. 633, 67 P. 1049. Such discretion was not abused in this case by the refusal of the trial court to hear evidence concerning matters antedating the filing of the divorce suit and which were approximately five years remote. The court was interested primarily in developments after the date of the divorce trial and in the status, condition and fitness of the parties at the time of the hearing for modification of the order."

The decision of the trial court is reversed and the case is remanded with instructions to the lower court to enter a decree in accordance with this opinion.   Costs to appellant.

PRATT, C. J., and WADE, WOLFE and McDONOUGH, JJ., concur.